In the Matter of the MARRIAGE OF Tammy L. MORRIS and Christopher E. Morris and In The Interest of Krystal Morris, a Child.

No. 06–02–00139–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 12, 2003.

Decided Dec. 23, 2003.

---

Vernard G. Solomon, Marshall, for appellant.

Robert R. Foster, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

From the divorce decree dated September 16, 2002, dissolving the marriage of Tammy L. Morris and Christopher E. Morris and dividing the property of the parties, Tammy appeals. She contends the trial court's mischaracterization of certain real property resulted in a disproportionate property division favoring Christopher. At issue on appeal are four separate items: (1) the timber on a 63.20–acre tract (and $10,000.00 proceeds from the sale of some of that timber), (2) an unimproved 2.80–acre tract, (3) the one-acre marital residence, and (4) rights in a shop located near the residence.

*Background*

The relevant dates and events are as follows:

*November 16, 1987.* Tammy and Christopher were married.

*December 7, 1990.* Tammy, Christopher, and Christopher's parents, Kenneth and Freda Morris, entered into a sales contract for a square, one-acre tract of land, at the center of which Tammy and Christopher's marital residence was being constructed at the elder Morrises' expense. As consideration for the property and residence, Tammy and Christopher, as purchasers, agreed to pay Kenneth and Freda $80,000.00 in installments.

*March 3, 1992.* Kenneth and Freda conveyed to Christopher, reciting it was being conveyed as Christopher's separate property, a 19.68–acre tract of land, excepting and reserving oil, gas, and other minerals. On this 19.68 acres is located the residence referenced in the December 7, 1990, sales contract.

*December 2, 1993.* Kenneth and Freda conveyed to Christopher, as his separate property, an undivided one-half interest in a 63.20–acre tract of land, excepting and reserving oil, gas, and other minerals.

*January 20, 1994.* Kenneth and Freda conveyed to Christopher, as his separate property, the other undivided one-half interest in the same 63.20–acre tract of land described in the December 2, 1993, conveyance, excepting and reserving oil, gas, and other minerals.

*August 17, 1998.* Christopher and Tammy obtained an $80,000.00 home equity loan from Shelby Savings Bank. The loan was secured by the one-acre residence tract—now surveyed and specifically described—located on the 19.68–acre tract conveyed to Christopher on March 3, 1992.

*October 19, 2000.* San Jacinto Sand Company conveyed to Christopher a 2.80–acre tract of land, excepting and reserving oil, gas, and other minerals.

*April 19, 2001.* Christopher executed a deed to Kenneth, including (1) the 19.68–acre tract deeded to Christopher March 3, 1992, and (2) the 63.20–acre tract deeded to Christopher December 2, 1993, and January 20, 1994.

*April 23, 2001.* Christopher filed the divorce action now on appeal.

*July 2001.* Kenneth sold two acres of timber from the 63.20–acre tract for $10,000.00, which was paid to, and kept by, Kenneth.

The trial court's Nunc Pro Tunc Final Divorce Decree awarded to Christopher, as his sole and separate property, the 63.20–acre tract and the 19.68–acre tract—on which is located the one-acre marital residence.[1] The decree made no mention of the 2.80–acre tract. The decree also does not address how Christopher could be awarded property he had previously deeded to his father.

*Standards for Property Division and Review*

In a divorce decree, a trial court must order the parties' estate divided "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). A trial court has broad discretion as to the division of marital property and, absent clear abuse of that discretion, an appellate court will not disturb a lower court's judgment. *McClary v. Thompson,* 65 S.W.3d 829, 833 (Tex.App.-Fort Worth 2002, pet. denied). Although a trial court's discretion in dividing property is not without limit, there arises an appellate presumption that the trial court properly exercised its discretion, shifting the burden to the appellant "to show from the record that

---

1. Inconsistent with the decree's declaration of property interests, the trial court's Additional Findings of Fact and Conclusions of Law (filed the same day) lists the 2.80–acre tract and the marital residence tract as the parties' community property.

the division was so disproportionate, and thus unjust and unfair, as to constitute an abuse," *In re Marriage of Taylor*, 992 S.W.2d 616, 620 (Tex.App.-Texarkana 1999, no pet.), and that the error probably did cause the rendition of an improper judgment, *Smith v. Smith*, 620 S.W.2d 619, 625 (Tex.Civ.App.-Dallas 1981, no writ).

Despite the trial court's broad discretion in determining an appropriate division of the parties' estate, the court is confined to dividing only the community property, *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985), and any mischaracterization of a major asset of the parties' estate, therefore, is reversible error affecting the just and right division of the community estate, *Reiss v. Reiss*, 118 S.W.3d 439, 442 (Tex., 2003); *McClary*, 65 S.W.3d at 833.

> Whether the trial court abuses its discretion in dividing the property, ... or commits reversible error in defining what property is properly a part of the community estate and therefore subject to division, ... the principle to be applied is the same. Once reversible error affecting the "just and right" division of the community estate is found, the court of appeals must remand the entire community estate for a new division.

*Jacobs*, 687 S.W.2d at 733. That is, on finding that an abuse of discretion has occurred, an appellate court cannot substitute its judgment for the trial court's division of property, but must remand to the lower court for a new division of the community estate.

The question before this Court, then, is whether the trial court's characterization of the disputed properties was legally correct and, if so, whether the court properly exercised its discretion in dividing the parties' community estate. Following a bench trial, the court issued conclusions of law, characterizing the 2.80–acre tract and the marital residence located on the one-acre tract as community property. Although not binding on an appellate court, a trial court's legal conclusions will be upheld on appeal unless erroneous as a matter of law. *Smith v. Smith*, 22 S.W.3d 140, 144 (Tex. App.-Houston [14th Dist.] 2000, no pet.). We note that the trial court's divorce decree is silent as to the division of the 2.80 acres and that the court awarded to Christopher, as his separate property, the marital residence and the underlying one-acre tract by failing to distinguish between that property and the larger 19.68 acre tract from which it was surveyed—the court simply awarded to Christopher all 19.68 acres. With this information in mind, we will address the parties' contentions as to each of the property interests in question.

*The 63.20 Acres of Timber*

While Tammy concedes the 63.20–acre tract was Christopher's separate property, she claims community ownership, or special separate ownership, of the timber located on the property. Citing *McElwee v. McElwee*, 911 S.W.2d 182 (Tex.App.-Houston [1st Dist.] 1995, writ denied), she argues that, like crops, timber grown on separate property is community property subject to division on divorce. *Id.* at 189. Tammy also makes the unsubstantiated claim her parents-in-law gifted the timber to both Tammy and Christopher for their retirement and to help pay for their daughter's future education. Though there is no document transferring the timber to Christopher and Tammy, she insists that this alleged gift was in lieu of a more traditional Christmas present and that her claim is supported by the lack of another, more satisfactory, explanation for the transfer of the 63.20 acres in two conveyances—the first in the weeks before Christmas and the second in the weeks

after.[2]

It is a fundamental principle that "any property or rights acquired by one of the spouses after marriage by toil, talent, industry or other productive faculty belongs to the community estate." *Vallone v. Vallone,* 644 S.W.2d 455, 458 (Tex.1982). This principle, however, does not apply to the situation presented in this case because the record is clear the tract was a gift to Christopher and was never impressed with a community character. At trial, Tammy, Christopher, and Kenneth all agreed that Christopher's parents had contracted and paid for the timber to be planted years in advance of the 1993 and 1994 conveyances and that Christopher did not expend any time, talent, or labor with respect to the trees. Even if Christopher had made some effort in working to maintain or increase the value of this property, the law nevertheless contemplates "that a spouse may expend a reasonable amount of talent or labor in the management and preservation of his or her separate estate without impressing a community character upon that estate." *Id.* The fact that the timber crop increased in value during the marriage, without any effort by the parties, is simply not enough to justify characterizing the property as part of the community estate. Before Christopher deeded the 63.20 acres to his father, all of it—acreage and unharvested timber—was Christopher's separate property.

■ Tammy also claims a community interest in $10,000.00 of timber sale proceeds collected by Kenneth from a July 2001 sale of two acres of timber from the 63.20–acre tract. She argues that, because the parties discussed the oil and gas development on the 63.20–acre tract before the divorce and before Christopher deeded the acreage to Kenneth, and because the sale of the two acres of timber arose from the oil and gas development, the proceeds were somehow impressed with a community nature. We have already determined the 63.20–acre tract's timber was Christopher's separate property before his conveyance to Kenneth. The subsequent sale of some of that timber by Kenneth could not have given Tammy any rights in those proceeds.

*The 2.80 Acres*

■ On October 19, 2000, the San Jacinto Sand Company conveyed a 2.80–acre tract of land to Christopher, and it was still in his name as of the time of the dissolution of his marriage to Tammy. Simply choosing to ignore Tammy's claim that the tract acquired during their marriage should have been characterized as community property, Christopher mistakenly states that no such tract of land is either mentioned in the final divorce decree or in any of the trial court's findings of fact and conclusions of law. It is true the divorce decree is silent as to the 2.80 acres; however, the court's conclusions of law, filed the same day, expressly characterize the tract as community property. We agree.

It is generally presumed that property possessed by either spouse during or on dissolution of marriage is community property, rebutted only by a spouse's clear and convincing demonstration of the property's separate character. TEX. FAM.CODE ANN. § 3.003 (Vernon 1998). At trial, the parties offered nothing more than conflicting testimony as to the means whereby the property was acquired. Tammy simply testified Christopher bought the property as part of the community while Christopher and Kenneth both testified the property was actually purchased by Kenneth

2. Both deeds were to Christopher.

for Christopher's benefit despite the fact the deed from the San Jacinto Sand Company conveyed the property directly to Christopher. Kenneth further testified he purchased the land for his son, designating it to be his sole and separate property, and never intended to make any sort of gift out of it for the benefit of his daughter-in-law. On cross-examination, however, both Christopher and Kenneth admitted they had no documentation to support their claims the property was a gift from father to son. Additionally, the deed language itself makes plain that the property was conveyed to Christopher for good, valuable, and sufficient consideration paid by him to the San Jacinto Sand Company. The 2.80 acres was community property.

*The One–Acre Marital Residence*

■ As earlier stated, the divorce decree awarding the 19.68 acres to Christopher as his sole and separate property fails to account for the court's characterization of the marital residence and the underlying one acre as community property. Instead, the court simply awarded all 19.68 acres to Christopher without considering the division of the one-acre tract surveyed out of the larger tract for the benefit of the community estate and without considering Christopher's prior conveyance of the 19.68 acres to his father. The confusion appears to arise, in part, from the fact that the one acre was not surveyed out of the 19.68 acres until after that larger tract was conveyed to Christopher as his separate property on March 3, 1992.

Particularly significant in addressing Tammy's claim that the one-acre marital residence was community property is the contract of sale entered into on December 7, 1990. This contract, signed by Tammy, Christopher, and Christopher's parents, provided that the parents would convey to Tammy and Christopher the one-acre tract—along with the residence then being built—in exchange for $80,000.00 to be paid in monthly installments. At the time of the contract, the property was simply described as

> "[o]ne . . . acre in the form of a square, to be surveyed with the residence now being built by [Christopher's parents] for [Tammy and Christopher] in the center of such one acre out of the W.D. Thompson Headright Survey, Panola County, Texas, out of a tract described in a deed dated May 19, 1977, from R.B. Smith, et ux, to Freda Lou Morris, . . . together with the right of ingress and egress over and across the above described tract of land."

Although the property's description is vague, the parties do not dispute that it is located on the 19.68 acre tract and that it was later surveyed in conjunction with the parties' home equity loan. Discounting the community interest created by the December 7, 1990, contract for sale, however, Christopher contends the March 3, 1992, conveyance of the entire 19.68 acres establishes a prima facie case for the property's separate character, rebutting the community presumption. Christopher seems to argue that, because his parents paid, either directly or indirectly, for the construction of the marital residence, and because his father testified he never looked to anyone other than his son for satisfaction on the contract for sale, they did not intend to convey any interest in the property to their daughter-in-law.[3]

---

**3.** To further illustrate this point, Christopher cites a promissory note executed on February 22, 1991, after the parties' marital residence had already been constructed. The note was signed only by Christopher and stated in part:

"For Value Received, I, the undersigned, promise to pay to Kenneth and Freda Morris the sum of Eighty Thousand ($80,000.00) Dollars, with no interest . . . . payable in 228

The characterization of most forms of property, including real estate, is determined by the property's character at the inception of the parties' title, *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex.2001), occurring when a party first has rights in the property, *Smith*, 22 S.W.3d at 145 (citing *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471, 474 (1949)). "When real property is acquired under a contract for deed or installment contract," as in the present case, "the inception of title relates back to the time the contract was executed, not the time when legal title is conveyed." *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex.App.-Austin 1999, no pet.). This means the one-acre tract was impressed with community character on December 7, 1990, when the parties entered into the contract for sale, giving the parties the right to obtain a survey of one acre around the residence. The subsequent conveyance of the entire 19.68 acres as Christopher's separate property could not have operated to alter those rights of the community. Regardless of the language of the March 3, 1992, deed, therefore, Christopher's parents conveyed 19.68 acres, one acre of which was community property subject to Tammy's earlier established interest. Christopher's subsequent deed of the 19.68 acres to his father could not act to divest the community of its interest in the one acre and the residence thereon. It was and remains community property.

*The Shop Near the Residence*

In addition to her claim the marital residence and the underlying one acre should have been included in the community estate, Tammy contends a nearby shop building should also have been included in the community estate or, if found to be Christopher's separate property, the community estate should have been reimbursed for enhancing its value. We conclude the shop was Christopher's separate property and no related community reimbursement right was proven.

Any improvements made on separate property—such as the construction of the shop on Christopher's separate property—are also considered separate property, because the property's character does not change despite the use of community funds to improve the property. *In re Marriage of Morris*, 12 S.W.3d 877, 881–82 (Tex. App.-Texarkana 2000, no pet.). Therefore, the shop continued to be Christopher's separate property.

A party's community reimbursement claim is purely equitable and obtains only when the separate estate of one spouse is in some way improved by the community estate. *Vallone*, 644 S.W.2d at 458. "The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Id.* at 459.

Although the parties agree that the shop was built during the parties' marriage and that it is located on Christopher's separate property, they disagree about the funds used to construct it. Tammy testified that Christopher and Kenneth built the shop in partnership, sharing the construction costs, while Christopher and Kenneth both testified that the shop was actually purchased by Kenneth for Christopher's benefit. Tammy's only testimony about the amount of her claim is limited to the tax appraisal value of the shop, not the amount of any community funds used in its construction. Because Tammy provided no evidence of the amount of community funds, if any, used in building the shop,[4] and

---

installments at $350.00 and one installment at $200.00."

4. There is also no evidence that would support a claim for "economic contribution" to

recognizing that a trial court's discretion in evaluating a claim for reimbursement is as broad as the discretion exercised by the trial court in making a just and right division of the marital estate, we conclude the court did not abuse its discretion in denying reimbursement to the community estate for the shop building. *See Morris,* 12 S.W.3d at 882 (citing *Penick v. Penick,* 783 S.W.2d 194, 198 (Tex.1988)).

*Conclusion*

Having determined that the 2.80–acre tract and the marital residence and its one-acre tract are community property, we reverse and remand the portion of the trial court's judgment dividing the parties' community property for a just and right division consistent with this opinion. We otherwise affirm the trial court's disposition of the parties' separate property as listed in the judgment.

Christopher's separate marital estate by the community marital estate under TEX. FAM.CODE ANN. §§ 3.401–3.410 (Vernon Supp.2004). That statutory scheme allocates increased equity in a piece of property between the competing marital estates which have contributed to that increased equity, based on evidence of the beginning equity in the property in question, the resulting or ending equity in that property, and the relative contributions of the competing marital estates. *See* TEX. FAM.CODE ANN. § 3.403.