In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana
______________________________

No. 06-04-00067-CV
______________________________

 
IN THE MATTER OF THE MARRIAGE 
OF BETTY FAYE TOMPKINS AND 
BOBBY JOE TOMPKINS
 



                                              
On Appeal from the 71st Judicial District Court
 Harrison County, Texas
Trial Court No. 02-0133

                                                 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
            After divorce was decreed between Bobby Joe Tompkins and Betty Faye Tompkins, efforts
to sell the marital home and to divide the marital estate produced numerous disputes and, ultimately,
this appeal. Bobby


 has, for the third time,


 filed a post-judgment attack on one of the trial court's
orders regarding the divorce from Betty. In this appeal from the trial court's order of final
accounting, Bobby, acting pro se, essentially argues that (1) the trial court abused its discretion in
dividing the marital estate, (2) Anne Shields (the purchaser of the marital residence) should be
ordered to pay Bobby for the timber crop that was growing on the marital estate at the time of the
sale, (3) Betty should be ordered to pay a portion of Bobby's federal income taxes (as was ordered
by the divorce decree), and (4) the trial court erred by admitting the testimony of Betty's expert
witness. We overrule each issue and affirm the trial court's judgment.
            To provide context for this appeal, we first provide some of the considerable procedural
history of this case. Post-divorce, the trial court ultimately appointed a receiver, Donna Smart (a
licensed realtor), to sell the Tompkinses' marital residence because Betty and Bobby could not agree
on a sales price and because the parties had had a difficult time getting it sold. Pursuant to an order
of the trial court dated April 1, 2004, the receiver, on April 13, 2004, sold the marital
residence—which sat on 42 acres, on part of which timber grew. On April 26, 2004, the trial court
received evidence and heard argument regarding a final accounting of Bobby and Betty's marital
estate. On June 8, 2004, the trial court signed an "Order of Final Account and Discharge of Receiver
and Payment of Monies." The trial court's order included the following specific findings:
            The  Court  finds  that  .  .  .  $249,319.29  of  proceeds  received  in  this
matter[, less] bills and amounts specified in the Nunc Pro Tunc Final Decree of
Divorce [in] the total of $152,311.54[, leaves] the sum of $97,007.75 which shall be
divided between the parties.
 
            The Court also heard the evidence and the argument of counsel with regard
to the claim filed by Anne Shields against the Receiver in this cause for breach of
contract. The Court finds . . . the record in this case demonstrates that the Receiver
because of the actions of Bobby Tompkins breached her contract with Anne Shields. 
The Court determines that Anne Shields sustained damages in the amount of Ten
Thousand and No/100 Dollars ($10,000), and further finds that Anne Shields
incurred the sum of Two Thousand and No/100 Dollars ($2,000.00) as attorney's
fees. The Court further finds that the judgment rendered against the Receiver in this
cause should be paid from the funds held by the Receiver pursuant to Texas Civil
Practice and Remedies Code § 64.053.
 
            . . . .
 
            The Court finds that reasonable and necessary attorney's fees were incurred
by Betty Faye Tompkins in post judgment pursuit of this matter in the sum of
$10,000.00 and these fees were incurred as the result of the conduct of Bobby Joe
Tompkins.
 
            The Court finds that reasonable and necessary attorney's fees were incurred
by the receiver for the services of her attorney, Scott E. Stevens, and those services
are in the amount of $7835.00. The Court further finds that the receiver incurred
expenses for travel, payment of delinquent taxes, and a garbage cleanup fee and said
expenses total $1046.18. Therefore the Court finds that the total costs due and owing
to receiver are $8881.18.
 
            The Court finds that Betty Faye Tompkins advanced the sum of $2000.00 to
the receiver for expenses on the property during the course of the receivership which
should have been divided between the parties but was not. Therefore the Court finds
that Betty Faye Tompkins is entitled to reimbursement of said funds in the sum of
$1000.00.
 
            IT IS ORDERED that Bobby Joe Tompkins's one-half of the remaining
proceeds is in the amount of $48,503.88 and from his $48,503.88 the following sums
shall be paid:
 
1.   the sum of $8881.18 shall be paid to Donna Burnett-Smart, receiver, for
expenses and attorney's fees incurred by virtue of actions necessary to
undertake due to the conduct of Bobby J. Tompkins and the sum of
$8881.18 shall be paid from Bobby Joe Tompkins's one-half of the
remaining proceeds to Donna Burnett-Smart for reimbursement of
expenses;
 
2.   the sum of $1,000.00 shall be paid to reimburse Betty Faye Tompkins for
one-half of the monies she advanced to the receiver for expenses on the
property during sale and the sum of $1000.00 shall be paid from Bobby
Joe Tompkins's one-half of the remaining proceeds to Betty Faye
Tompkins for reimbursement of advanced funds;
 
3.   the sum of $10,000.00 shall be reimbursed to Betty Faye Tompkins for
the aforementioned attorney's fees and the sum of $10,000.00 shall be
paid from Bobby Joe Tompkins's one-half of the remaining proceeds to
Betty Faye Tompkins for reimbursement of attorney's fees; and
 
4.   one-half of the sum awarded to Anne Shields in the judgment above
which total the sum of Six Thousand and no/100 ($6,000.00) shall be
paid to Anne Shields from Bobby Tompkins [sic] remaining proceeds
held in receivership.
 
            THEREFORE IT IS ORDERED that the receiver shall write and distribute
a check to Bobby Joe Tompkins in the sum of $22,622.70.
 
(1)       No Abuse of Discretion Occurred in the Division of the Marital Estate
            In his first point of error, Bobby contends the trial court unjustly divided the marital estate. 
He complains about three specific deductions from his portion of the marital estate: (A) one-half
of Shields' damages for the breach of contract claim, (B) all of Smart's expenses and attorney's fees
associated with defending that breach of contract claim, and (C) all of Betty's attorney's fees related
to Bobby's previous appeal in this case. We address each complaint and find no abuse of discretion
in the division of the marital estate.
            (A)      Assessing Against Bobby One-Half of Shields' Damages for Breach of Contract Was
Proper

            "In a decree of divorce or annulment, the court shall order a division of the estate of the
parties in a manner that the court deems just and right, having due regard for the rights of each party
and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (Vernon 1998). "This provision
does not obligate the court to divide the property equally." In re Marriage of Scott, 117 S.W.3d 580,
584 (Tex. App.—Amarillo 2003, no pet.). "A trial court has broad discretion as to the division of
marital property and, absent clear abuse of that discretion, an appellate court will not disturb a lower
court's judgment." In re Marriage of Morris, 123 S.W.3d 864, 867 (Tex. App.—Texarkana 2003,
no pet.). "A trial court abuses its discretion when it divides property on values that are not in
evidence" or is otherwise manifestly unjust. Id. (citing Martin v. Martin, 797 S.W.2d 347, 351 (Tex.
App.—Texarkana 1990, no writ)); O'Carolan v. Hopper, 71 S.W.3d 529, 532 (Tex. App.—Austin
2002, no pet.). This means that a trial court need not divide the assets or debts of a marital estate in
an equal manner, so long as the division is not manifestly unjust.
            A trial court has broad discretion to appoint a receiver in a divorce case. See Tex. Fam.
Code Ann. § 6.502(a)(5) (Vernon Supp. 2004–2005). Our law provides that a receiver who holds
property in a receivership "may be sued in his official capacity in a court of competent jurisdiction
without permission of the appointing court." Tex. Civ. Prac. & Rem. Code Ann. § 64.052 (Vernon
1997). If a judgment is won against a receiver, "[t]he court that appointed [the] receiver shall order
any judgment against the receiver to be paid from funds held by the receiver." Tex. Civ. Prac. &
Rem. Code Ann. § 64.053 (Vernon 1997) (emphasis added). When the receiver sells property held
in a receivership, the receiver must apply the proceeds of that sale to the payment of certain claims,
including "claims and accounts against the receiver on contracts made by the receiver . . . ." Tex.
Civ. Prac. & Rem. Code Ann. § 64.051(a)(5) (Vernon 1997). 
            Shields testified she had an earnest money contract with Smart to purchase the marital
residence. The terms of that contract were that the parties were to close on the home sale May 26,
2003. The closing did not occur at that time because Bobby appealed the trial court's order denying
Bobby's bill of review, thereby clouding the receiver's title due to the lack of a final judgment
supporting the receiver's authority to sell. Shields then sued Smart for breach of contract when
Smart was unable to sell the marital residence May 26, 2003. Shields offered evidence in the court
below that she suffered damages from the breach totaling $23,125.66. Bobby did not object to
Shields' evidence. Nor did Bobby present any contrary evidence to suggest Shields did not suffer
these damages. The only evidence Bobby offered in response to that claim was his own testimony,
in which he denied he did anything to block the sale and, instead, simply called Smart's office about
the possibility of partitioning the property rather than selling the entire forty-two acres along with
the residence. 
            On the breach of contract claim, the trial court awarded Shields $10,000.00 in damages and
$2,000.00 in attorney's fees. The statute required that the amount of Shields' judgment be deducted
from  the  marital  estate  in  the  hands  of  the  receiver.  See  Tex.  Civ.  Prac.  &  Rem.  Code
Ann. § 64.053. The trial court expressly found Bobby caused Smart to breach the contract with
Shields. Nevertheless, the trial court allocated the costs of Shields' judgment between Betty and
Bobby on an equal basis. To the extent that Bobby's point of error arguably challenges the
sufficiency of the evidence to support Shields' judgment, applying the usual standards of review, see
Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285–86 (Tex. 1998); Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996); and Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986),
we hold that there is more than a scintilla of evidence to support Shields' judgment and that the
judgment is not manifestly unjust.
            Further, given that the trial court has broad discretion in dividing the assets and debts of the
marital estate, that the trial court was statutorily required to deduct Shields' judgment from the
monies held by the receiver, and that Bobby has not shown the trial court acted without reference
to guiding principles or law or that the judgment is manifestly unjust, we cannot say the trial court
abused its discretion by deducting the costs of half of Shields' judgment from Bobby's share of the
funds held by the receiver.
            (B)      Assessing Against Bobby All of Smart's Expenses and Attorney's Fees Incurred in
Defending the Breach of Contract Claim Was Not an Abuse of Discretion

            The trial court deducted all of Smart's expenses and attorney's fees associated with defending
the breach of contract claim against Shields from Bobby's share of the proceeds from the house sale. 
Bobby contends this was error. As discussed above, the evidence in this case is sufficient to support
the trial court's conclusion that Bobby's conduct solely caused Smart to breach the contract with
Shields. It was within the trial court's broad discretion to divide the costs associated with defending
the breach of contract claim in a "just and right" manner, which the trial court did by allocating the
full costs associated therewith to Bobby because of his behavior in causing the breach. See Tex.
Fam. Code Ann. § 7.001; Morris, 123 S.W.3d at 867. We cannot say the trial court abused that
discretion by deducting the entire $8,881.18 from Bobby's share of the monies held by the receiver.
            (C)      Assessing Against Bobby All of Betty's Attorney's Fees Related to Bobby's Previous
Appeal in this Case Was Not an Abuse of Discretion

            Bobby next contends the trial court erred by awarding Betty $10,000.00 in attorney's fees for
the prior appeal from his share of the monies held by the receiver. On this point, Bobby argues first
that, because the Nunc Pro Tunc Final Decree of Divorce states "each party shall be responsible for
his or her own attorney's fees incurred as a result of legal representation in this case," he should not
be held liable for Betty's attorney's fees; and second that, because this Court did not sanction Bobby
for filing a frivolous appeal, the trial court cannot now award Betty's attorney's fees associated with
that appeal.
            With respect to whether the trial court's nunc pro tunc judgment now precludes sanctioning
Bobby with Betty's attorney's fees, we cannot agree with Bobby's interpretation of the trial court's
nunc pro tunc judgment. We note that the Nunc Pro Tunc Final Decree of Divorce was entered
pursuant to an agreement between Bobby and Betty. The trial court did not contemplate that either
party would appeal an agreed judgment. By approving and signing an agreed judgment, the trial
court would naturally assume the parties would obey the judgment's terms and not seek additional
relief  from  that  judgment.  Nonetheless,  Bobby  appealed  that  judgment.  See  generally
Tompkins I, No. 06-03-00067-CV. Considering that the provision regarding attorney's fees
concerned an agreed judgment and did not contemplate that a party might appeal, and in light of the
unusual facts and procedural history of this case, we cannot say the trial court's nunc pro tunc
judgment precludes the subsequent award of Betty's appellate attorney's fees from Bobby's share of
the monies held by the receiver.
            With respect to this Court's decision in Tompkins I, we cannot agree that our holding in that
case precluded the trial court from deducting the costs of Betty's attorney's fees associated with that
appeal from Bobby's share of the monies held by the receiver. In Tompkins I, this Court overruled
Betty's motion to have Bobby sanctioned for a frivolous appeal. Our decision in Tompkins I
expressed no opinion as to whether Bobby's prior appeal was frivolous. Thus, there was no "law of
the case" to preclude the trial court's decision that the prior appeal was or was not, in fact, frivolous. 
Additionally, Bobby has made no effort in his briefing to this Court to demonstrate that the trial
court's award of Betty's attorney's fees constituted an abuse of discretion. See Tex. R. App. P.
38.1(h). Accordingly, we cannot agree with Bobby's contention that the trial court erred in its
division of the marital estate.
(2)       Bobby Has Not Properly Sought Recovery for the Timber on the Marital Homestead at the             Time of the Sale

            Bobby next contends the trial court should have ordered Shields to pay Bobby for the timber
he was growing on the marital homestead, but for which he did not receive payment. Bobby's claim
fails for two reasons. First, Bobby did not file a suit or countersuit against Smart or Shields for
conversion. See, e.g., Espey v. Boone, 75 S.W. 570 (Tex. Civ. App. 1903) (action to recover
damages for fraudulent conveyance by defendants to innocent purchaser of property). Therefore, the
question of whether he should be compensated for any property Shields allegedly converted is not
before the Court. Second, while there is some record evidence that the marital residence and
attendant acreage had, at varying times, been appraised at values much higher than the actual sale
price, there is also record evidence supporting the final sale price. Moreover, property valuations
generally include the value of any crops then growing on them. See, e.g., Tex. Bus. & Com. Code
Ann. § 2.107(b) (Vernon 1994) (contract for sale of timber or growing crops; crop can form part of
realty unless contracted otherwise); Tex. Bus. & Com. Code Ann. § 9.102(a)(44) (Vernon Supp.
2004–2005) (defining "goods" to include standing timber to be removed under contract for sale).
            The record before us reveals no intent to exclude from the sale of the marital homestead the
timber crop then growing on the property. Bobby had the timber appraised before the sale, Shields
had its value appraised before and after the sale, and the sales contract did not expressly retain any
timber rights to Bobby or anyone else. Accordingly, we conclude the marital estate was
compensated for the value of the timber as part of the full sales price of the homestead and acreage.
(3)       Bobby Has Not Properly Sought To Require Betty To Pay a Portion of Bobby's Federal 
            Income Taxes

            In his next point of error, Bobby contends Betty has not abided by the provision of the nunc
pro tunc decree that requires her to compensate Bobby for certain portions of Bobby's federal income
tax penalties that accrued at the time he cashed in his 401k. Bobby's remedy, if any, is to seek
enforcement of that judgment with the trial court. See Tex. Fam. Code Ann. § 157.001(a) (Vernon
2002) (motion for enforcement of provisions of final divorce decree). Bobby has not sought such
relief from the trial court; this issue is, therefore, not properly before this Court.
(4)       Bobby Has Not Properly Raised His Complaint Asserting Error in Admitting the Testimony             of Betty's Expert Witness

            In his reply brief, Bobby complains, in what would be a new point of error, that the trial court
erred by admitting expert testimony from Steve Sutton regarding the value of the timber on the
marital estate. Our Rules of Appellate Procedure do not permit an appellant to raise new issues in
a reply brief. The purpose of a reply brief is to respond to and address "any matter in the appellee's
brief." Tex. R. App. P. 38.3. Betty's brief did not raise this issue. Bobby's final issue is, therefore,
not properly presented.
            Nevertheless, we conclude Bobby did not preserve this issue for appellate review. To
preserve an issue for appellate review, there must be a timely objection in the trial court and the
objection must have been pursued to an adverse ruling. Tex. R. App. P. 33.1. Sutton testified before
the trial court as an expert regarding the value of the timber crop on the Tompkinses' marital
residence. Bobby did not object to any of Sutton's testimony, nor did Bobby challenge Sutton's
qualifications to testify as an expert or raise the issue of whether he received timely advance notice
of the expert. By failing to raise any of these objections at the trial court level, Bobby failed to
preserve these issues for appellate review.
            For the stated reasons, we affirm the trial court's judgment.



                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 16, 2005
Date Decided:             July 8, 2005