Affirmed and Memorandum Opinion filed August 3, 2006








Affirmed and Memorandum Opinion filed August 3, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01028-CV

____________

 

PATRICK J. COMBE-OVADIA, Appellant

 

V.

 

AMARIT GONZALEZ COMBE-OVADIA, Appellee

 



 

On Appeal from the 245th
District Court

Harris County, Texas

Trial Court Cause No. 2003-07057

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Patrick J. Combe-Ovadia, appeals the portion of
the divorce decree entered by the trial court dividing the marital estate.  We
affirm.  

                                                  Background








Amarit and Patrick were married on May 27, 1989.  Two
children were born during the marriage.  On February 11, 2003, Amarit filed for
divorce, and on July 16, 2004, the trial court granted a divorce on the ground
of insupportability.  The trial court awarded Amarit community assets in the
amount of $82,474.85 and community debts in the amount of $1,600.00, for a
total net amount of $80,874.85.  The trial court awarded Patrick community
assets in the amount of $107,801.91 and community debts in the amount of $114,074.41,
for a total net amount of minus $6,272.80.  The trial court ordered that each
party was responsible for his or her own attorney fees and costs.  Among other
personal and real property, the trial court found the Somerset Place property
to be Amarit=s separate property. 

On appeal, Patrick asserts the trial court abused its
discretion by failing to divide the community estate in a just and right
manner.  Specifically, Patrick complains he was awarded most of the community
debtCan amount which
exceeded the total amount of community assets awarded to himCresulting in a
negative award.  Patrick=s other complaints are centered on the
trial court=s characterization of the Somerset Place property as
Amarit=s entire separate
property because the community estate made monthly mortgage payments on that
property and the community was entitled to economic contribution for those
mortgage payments.  

                                         Just and Right Division

In his first issue, Patrick claims the trial court abused
its discretion by failing to divide the community estate in a just and right
manner.  In dividing the community estate, the trial court shall order a
division of the estate of the parties in a manner the court deems just and
right, having due regard for the rights of each party.  Tex. Fam. Code Ann. ' 7.001 (Vernon
2006).  A trial court has broad discretion in dividing the community estate
upon dissolution of marriage.  Vallone v. Vallone, 644 S.W.2d 455, 460
(Tex. 1982).  We will presume the trial court exercised its discretion and not
disturb the trial court=s division unless an abuse of discretion
has been shown.  Id.  To prove that the trial court abused its
discretion, the appellant must demonstrate from the evidence in the record that
the division was manifestly unjust and unfair.  Barnard v. Barnard, 133
S.W.3d 782, 787 (Tex. App.CFort Worth 2004, pet. denied); Zieba v.
Martin, 928 S.W.2d 782, 790 (Tex. App.CHouston [14th
Dist.) 1996, no writ) (op. on reh=g).  








Under the abuse of discretion standard, the legal and
factual sufficiency of the evidence are not independent grounds of error, but
are merely relevant factors in assessing whether the trial court abused its
discretion.  Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991).  We review the trial court=s findings of fact
for legal and factual sufficiency of the evidence by the same standards in
reviewing the evidence supporting a jury=s finding.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  

When reviewing the legal sufficiency of the evidence, we
review the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it.  City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a
reasonable fact finder could, and disregard contrary evidence unless a
reasonable fact finder could not.  Id. at 827.  The evidence is legally
sufficient if it would enable fair-minded people to reach the verdict under
review.  Id.  In conducting a factual sufficiency review, we must
examine the entire record, considering both the evidence in favor of, and
contrary to, the challenged finding, and set aside the finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). 

We review a trial court=s conclusions of
law as legal questions.  BMC Software Belguim, N.V. v. Marchand, 83 S.W.3d
789, 794 (Tex. 2002).  Conclusions of law may not be challenged for factual
sufficiency, but we may review the trial court=s legal
conclusions drawn from the facts to determine their correctness.  Id. 
If we determine a conclusion of law is erroneous, but the trial court rendered
the proper judgment, then reversal is not required.  Id.  








The trial court awarded Amarit community assets in the
amount of $82,474.85 and community debts in the amount of $1,600.00, for a
total net amount of $80,874.85.  The trial court awarded Patrick community
assets in the amount of $107,801.91 and community debts in the amount of
$114,074.41, for a total net amount of minus $6,272.80.  While the division of
the community estate need not be equal, it should be equitable.  Zieba v.
Martin, 928 S.W.2d 782, 790 (Tex. App.CHouston [14th
Dist.] 1996, no writ).  Therefore, the trial court must have some reasonable
basis for an unequal division of the property.  Id.  

When exercising its discretion in making a just and right
division, the trial court may consider the following factors:  (1) the spouses= capacities and
abilities; (2) benefits that the party not at fault would have derived from the
continuation of the marriage; (3) business opportunities; (4) education; (5)
physical conditions of the parties; (6) the relative financial conditions and
obligations of the parties; (7) size of the separate estates; (8) the nature of
the property; (9) disparities in earning capacities and income; and (10) the
fault of the breakup of the marriage.  Murff v. Murff, 615 S.W.2d 696,
699 (Tex. 1981).  The trial court may also consider the wasting of community
assets.  Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998).  

In making a just and right division, the trial court took
into consideration Athe evidence and the issues in this case.@  The evidence
shows that Amarit last worked full-time in 1993, when their first child was
born, after which time, she helped Patrick with his business, KCO Management,
Inc., a general contracting company.  Amarit is a certified public accountant. 
At the time of trial, Amarit was working part-time for an agency interpreting
Spanish and her then current monthly income of $800 was not sufficient to pay
her bills.  Amarit believes she will be able to work more when the divorce
proceedings are over.  Patrick is paying $900 a month in child support and is
responsible for providing the children=s health
insurance.  Amarit anticipates that she will have a mortgage.  








Amarit testified that she has no assets, cash, or
retirement fund.  Amarit testified she does not have the ability to borrow from
anyone.  However, she has a friend in Mexico who deposits money in an account
at a bank in Mexico for her, but Amarit states her friend expects her to repay
that money.  Amarit inherited $15,000 from her father in 1996, and he gave her
$150,000 during her marriage, but all of that money has been spent.  Amarit
inherited real property in Mexico from her father, which is her separate
property.  Amarit=s trial inventory shows she has $100,000
equity in the Mexico property.  Amarit claims that although people are residing
on the property, she is not collecting rent.  Patrick, on the other hand,
asserts Amarit is collecting rent. 

Amarit also testified that her car was stolen and destroyed
the day before the hearing on her motion to enforce the temporary orders.  The
car was driven to a place where it was destroyed.  Amarit testified that
Patrick had a key and there were distinctive marks on the car that linked its
destruction to Patrick.  Since her car was destroyed, Amarit has had to borrow
a car.  Amarit claims she used the $5,000 in insurance proceeds on the car to
pay for mediation in this case.  

Amarit complains Patrick received 100 percent of the
proceeds ($52,000) from the sale of a condominium that occurred while the
divorce was pending.  Amarit testified that the sale violated the temporary
order entered in this case prohibiting the sale of assets.  Amarit admitted the
proceeds of the sale of the condominium would have gone into the account of KCO
Management.  Patrick testified that KCO Management, which is a general
contracting company, buys houses and condominiums to fix up and resell. 
Patrick stated the proceeds of the sale of the condominium were used to pay off
the balance of the loan.  Prior to selling this condominium, KCO Management had
sold seven or eight condominiums in the same project during the marriage. 
Patrick testified the sale did not violate the temporary order because it did
not prohibit Patrick from continuing to run KCO Management=s business.  The
trial court awarded Patrick the $52,000 in proceeds from the sale of the
condominium.  

Patrick and Amarit owned two condominiums in France. 
Amarit complained that Patrick violated the temporary order by failing to pay
the mortgages on both condominiums.  Patrick testified that he did not have the
money to pay the mortgages on the two condominiums.  The trial court awarded Patrick
and Amarit each one of the two condominiums.  








In its findings of fact, the trial court found Patrick Adeposited hundreds
of thousands of dollars during the operation of his business@ and A[w]hile this case
was pending, [Patrick] spent more money that [sic] he alleged he had income.@  Patrick does not
challenge these findings.  Patrick testified that in 2001, 2002, and 2003, he
deposited over $800,000 in his business account, not his personal account. 
Patrick explained that he had Atwo big contracts.  One was for over
$300,000, and the other one was 200,000.  So it=s 500,000.  Then
the small business, the small jobs.@  Amarit also
testified that since the divorce has been pending, Patrick has taken $300,000
in cash from the bank through his business.  Patrick stated that he cashed a
large number of checks Abecause most of the guys, my
subcontractors, besides the big company, are paid in cash.@  

Patrick testified, at trial in 2004, that his income as a
general contractor is $3,500 to $4,000 per month.  However, on his application
to purchase a car at CarMax, Patrick stated that his income was $5,000 per
month.  And on his income tax return for 2003, Patrick stated his annual income
was $13,000.  Patrick explained that while some months he makes $5,000, he also
makes less during other months.  Patrick testified that A2003 was very bad
year@ and his income
dramatically decreased with the divorce.  For 2001 and 2002, Patrick reported
annual incomes of $25,000 and $27,000, respectively.  

Patrick=s primary complaint is that the trial
court ordered him to pay most the community estate=s debt, including
$36,068.71 in retail debt, while ordering Amarit to pay only $1,600 in retail
debt, and ordering him to pay $38,000 for a vehicle that was repossessed by the
lender, particularly when she was awarded the Somerset Place property with
$155,000 in equity and the property in Mexico with $100,000 in equity as her
separate property, and the community estate=s fifty-percent
interest in Chateau Memorial, L.L.C., which owns a commercial building
providing rental income.  








The evidence shows that Patrick deposited $800,000 into his
business account over a period of three years and that he also took $300,000
out of his business account.  During this same period, Patrick=s income, as
stated on his tax returns, was as low as $13,000 and as high as $27,000.  The
trial court apparently did not believe Patrick=s explanation for
the expenditure of $300,000 through KCO=s Management while
reporting such a comparatively small amount of income.  See Murff, 615
S.W.2d at 700 (stating the trial court has the opportunity to observe the
parties= testimony and
determine their credibility). 

The evidence is legally and factually sufficient to support
the trial court=s finding that Patrick had deposited a
large sum of money in his business account and had spent more than he alleged
as income.  The wasting of community assets is a factor the trial court may
consider in making a just and right division.  Schlueter, 975 S.W.2d at
589.  The trial court has authority to order the payment or disposition of the
community debts in its consideration and determination of the division of the
community estate.  Taylor v. Taylor, 680 S.W.2d 645, 648 (Tex. App.CBeaumont 1984,
writ ref=d n.r.e.).  We
observe that the trial court awarded Patrick more than half of the community
estate=s assets, including
KCO Management.  Thus, we cannot say the trial court abused its discretion in
awarding Patrick most of the community debt in light of its finding that he had
spent more than what his income was purported to be.  Patrick=s first issue is
overruled.[1]

                        Characterization of Separate Property








In his second issue, Patrick claims the evidence is legally
and factually insufficient to support the trial court=s characterization
of the Somerset Place property as Amarit=s entire separate
property.  Patrick admits there is evidence in the record supporting Amarit=s having a
separate property interest in the Somerset Place property, but claims there is
insufficient evidence to support an award of the property as her entire
separate property interest because, with the exception of the down payment and
several monthly mortgage payments made by Amarit=s father, Patrick
paid the monthly mortgage from his salary.  

All property possessed by either spouse during or on
dissolution of marriage is presumed to be community property.  Tex. Fam. Code Ann. ' 3.003(a) (Vernon 2006);
McKinley v. McKinley, 496 S.W.2d 540, 543 (Tex. 1973).  The burden of
overcoming the presumption of community property is on the party asserting
otherwise by clear and convincing evidence.  Licata v. Licata, 11 S.W.3d
269, 272B73 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  As relevant here, separate property includes
property acquired by a spouse by gift during the marriage.  Tex. Fam. Code Ann. ' 3.001(2) (Vernon
2006).  

The settlement statement shows Amarit as the purchaser of
the Somerset Place property.  Documents from the mortgage company also show
Amarit as the borrower.  Amarit testified that in 1990, her father gave her $40,000
for the down payment on the Somerset Place house, which had a contract sales
price of $125,500.  Bank documents show two payments from Amarit=s father, Carlos
Gonzalez, totaling $41,924.14 payable to Houston Title Company.  There are also
11 payments by Amarit=s father directly to the mortgage company
or to the seller of the house, totaling $13,106.96.  Amarit also introduced
into evidence 14 checks, totaling $10,950.00, that were drawn on her father=s bank account,
but made payable to her, which she claimed she paid the mortgage company.  








On appeal, Patrick does not challenge Amarit=s separate
property status with regard to her father=s gift to her of
the down payment and a number of mortgage payments, but asserts the community
estate owns a pro rata portion of the property because the community estate
made mortgage payments and, therefore, Amarit=s separate estate
and the community estate own the property as tenants in common.  Whether
property, including real estate, is separate or community is determined by its
character at the inception of the party=s title.  Barnett
v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001); In re Marriage of Morris,
123 S.W.3d 864, 871 (Tex. App.CTexarkana 2003, no pet.).  Inception of
title is when a party first has a claim of right to the property by virtue of
which title is ultimately vested.  Wilkerson v. Wilkerson, 992 S.W.2d
719, 722 (Tex. App.CAustin 1999, no pet.).  In the absence of
any challenge by Patrick on appeal to Amarit=s claim that the
down payment and certain mortgage payments were a gift to her from her father,
the Somerset Place property is Amarit=s separate
property by virtue of the inception of title rule.  

Moreover, contrary to Patrick=s position that
the community estate owns a pro rata share of the property by virtue of having
made mortgage payments, the community estate=s mortgage
payments on Amarit=s separate property does not change the
property=s separate property
status.  AOnce the character of the property is fixed, the use
of funds of another estate to complete the purchase does not alter the
character of the property, although the other estate may be entitled to
reimbursement for the funds contributed.@  Wilkerson,
992 S.W.2d at 722B23; see also Moroch v. Collins, 174
S.W.3d 849, 856 (Tex. App.CDallas 2005, pet. denied) (stating a claim
for economic contribution does not affect the inception of title under which
the character of property is determined at the time the right to own or claim
the property arises); Bradley v. Bradley, 540 S.W.2d 504, 512 (Tex. Civ.
App.CFort Worth 1976,
no writ) (stating that where a community obligation for the purchase of land is
given to purchase such land and its status is fixed as community property, its
status is not later changed into separate property by the fact that the
community debt is paid with separate funds); cf. In re Marriage of Morris,
123 S.W.3d at 871 (stating separate property=s character does
not change despite use of community funds to improve property).  Patrick=s second issue is
overruled.

                                        Economic Contribution








In his third and fourth issues, Patrick claims the trial court
erred when it failed to order a division of his claims for economic
contribution of the community estate to the separate estate of Amarit for
mortgage reduction and capital improvements.  AA marital estate
that makes an economic contribution to property owned by another marital estate
has a claim for economic contribution with respect to the benefited estate.@  Tex. Fam. Code Ann. ' 3.403 (Vernon
2006).  A claim of economic contribution allows a marital estate that has
contributed to the reduction of the principal amount of a debt owned by another
marital estate to recover from the benefited estate.  Id. ' 3.402(a)(2)
(Vernon 2006).  Economic contribution is also defined as the dollar amount of Acapital
improvements other than by incurring debt.@  Id. ' 3.402(a)(6).  

The amount of a claim for economic contribution is
determined by multiplying the equity in the benefited property on the date of
divorce by a fraction.  Id. ' 3.403(b).  The
fraction=s numerator is the
amount of economic contribution by the contributing estate and its denominator
is equal to the sum of that same economic contribution by the contributing
estate and the economic contribution by the benefited estate to the equity in
the property.  Id.  As here, if the benefited estate is the separate
property of a spouse and the contributing estate is the community estate, the
amount of contribution is measured by determining (1) the net equity of the
separate property estate in the property as of the date of the first economic
contribution to the property by the community estate, and (2) any additional
contribution to the equity in the property made by the separate property estate
after the date of the first economic contribution to the property by the
community estate.  Id. ' 3.403(b-1)(2).  Thus, three Aitems@ generally will be
needed to calculate a claim for economic contribution: (1) the equity value at
the date of marriage, or the value on the date the contribution was started or
made, if later; (2) the equity value of the property at the date of divorce;
and (3) the dollar amount of the economic contribution.  Avila v. Avila,
No. 04-04-00196-CV, 2005 WL 708431, at *2 (Tex. App.CSan Antonio Mar.
30, 2005, no pet.) (mem. op.).  








Patrick did not provide the trial court or this court with
the equity of the Somerset Place house on the date the community estate made
its first contribution by either mortgage reduction or capital improvements. 
Without that value, the community=s estate=s claim for
economic contribution cannot be calculated in accordance with Section 3.403 of
the Family Code.  See Hamlin v. Featherston, No. 2-03-078-CV, 2005 WL
792686, at *4 (Tex. App.CFort Worth Apr. 7, 2005, no pet.) (mem.
op.) (holding that because there was no evidence in the record of the net
equity in the home as of the date the community estate made its first payment
on the wife=s separate property, the trial court used incorrect
figures in calculating the amount of the community estate=s claim for
economic contribution); Avila, 2005 WL 70831, at *2 (stating that
because wife failed to present evidence to the trial court regarding the equity
values as of the date of the first contribution to separate properties, the
appellate court could not make the calculations required by law without
speculating as to the pertinent values).  Accordingly, we have no basis to
conclude the trial court abused its discretion in denying Patrick=s claim for
economic contribution.   Patrick=s third and fourth
issues are overruled.

          Thee
judgment of the trial court is affirmed.  

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed August 3, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.









[1]  In post-submission briefing, Patrick complains the
trial court based the division of the community debt by looking at the party=s name on the debt.  Patrick asserts there was no finding
by clear and convincing evidence that the creditors agreed to look solely to
his separate estate for the majority of the community debt.  We need not
address any arguments raised in Patrick=s
post-submission letter that were not raised in his original brief.  See
Romero v. State, 927 S.W.2d 632, 634 n.2 (Tex. 1996) (stating petitioner
failed to preserve issue for review by raising it for first time
post-submission).