TAYLOR V. TAYLOR

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-435-CV

LARRY RAY TAYLOR APPELLANT

V.

LULA M. TAYLOR APPELLEE

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Larry Ray Taylor appeals the property division in the trial court’s decree granting appellee Lula M. Taylor a divorce from appellant.
(footnote: 2)  Appellant brings forty-four issues for our review.  We affirm.

Background

Appellant and appellee were married on May 12, 1986.  They did not have any children together.  The parties owned two tracts of real property in Fort Worth, Tarrant County, Texas that made up the bulk of the property to be divided:  (1) 4941 Harlem Street; and (2) 3513 Chimney Rock.  During the marriage, the parties lived at the Chimney Rock property, which appellee had acquired before the marriage.  They used the Harlem Street property as rental property. 

On October 29, 1986, appellee executed a general warranty deed transferring a one-half interest in the Chimney Rock property to appellant.  Appellee testified at trial that her sole purpose in executing the deed was for appellant’s convenience in dealing with subcontractors working on the property to repair fire damage.  According to appellee, she did so at appellant’s request.  She testified that it was not her intention to make a gift to him of any of the property at that time. 

Appellee and appellant were separated in August 1999 when appellant was incarcerated for sexual assault of a child and sentenced to ten years’ confinement.  Appellee filed for divorce on November 17, 2003 alleging insupportability, cruel treatment, conviction of a felony and incarceration, and abandonment as grounds for divorce. 

In 2004, while the divorce was pending, appellee sold the Harlem Street property with the trial court’s approval and in accordance with the trial court’s order.  Appellee’s attorney held the sale proceeds in a trust account pending the final decree of divorce, and the trial court authorized appellee’s attorney and, later, appellant’s attorney to withdraw funds from the account for attorneys’ fees.  The remainder of the parties’ property consisted of both personal property and household items, three motor vehicles, two retirement savings accounts held by appellee, one life insurance policy insuring appellee’s life, and a burial policy in appellee’s name. 

The trial court granted the divorce on November 14, 2005 and signed the final decree on February 9, 2006.  Appellant appeals the property division.

Chimney Rock Property

Appellant contends in his fourth, thirty-third, thirty-fourth, thirty-sixth, and thirty-seventh issues that the trial court abused its discretion by awarding the Chimney Rock property to appellee as her separate property based on its finding that appellant judicially admitted that the Chimney Rock property was appellee’s separate property.  In his fifth through sixteenth, twenty-ninth through thirty-second, thirty-fifth, thirty-ninth through forty-first, and forty-third through forty-fourth issues, he contends that the trial court erred by voiding the October 29, 1986 deed purporting to give him a one-half interest in the property and by hearing parol evidence regarding appellee’s intent in executing the deed. 

In its findings of fact and conclusions of law, the trial court made the following finding:

Before the marriage of the parties, Lula Taylor owned the following property with the values shown:  3513 Chimney Rock, Arlington, Texas.  Respondent Larry Taylor induced Petitioner Lula Taylor to sign a warranty deed conveying a one-half interest in and to the separate property of Lula Taylor, to enable Larry Taylor to negotiate with, and deal with contractors and insurance adjusters, following an insured loss to the property.  Larry Taylor admitted in Court pleadings, discovery and in prior testimony in Court hearings, in this cause, that the property was the separate property of Lula Taylor.  The Court further found that the conveyance of the one-half interest was meant only to facilitate the repairs to the property, and that the parties expressed no actual intent to convey any ownership to Larry Taylor. 

“Assertions of fact, not [pled] in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.”  
Holy Cross Church of God in Christ v. Wolf
, 44 S.W.3d 562, 568 (Tex. 2001) (quoting 
Houston First Am. Sav. v. Musik
, 650 S.W.2d 764, 767 (Tex. 1983)); 
Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc
., 192 S.W.3d 827, 835 (Tex. App.—Fort Worth 2006, no pet.).  A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue. 
 Lee v. Lee
, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.).  A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it.  
Peck v. Peck
, 172 S.W.3d 26, 31 (Tex. App.—Dallas 2005, pet. denied)
; 
Dutton v. Dutton
, 18 S.W.3d 849, 853 (Tex. App.—Eastland 2000, pet. denied); 
Roosevelt v. Roosevelt
, 699 S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism’d).  

This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement.  
U.S. Fid. & Guar. Co. v. Carr
, 242 S.W.2d 224, 229 (Tex. Civ. App.—San Antonio 1951, writ ref’d); 
Peck
, 172 S.W.3d at 31; 
Lee
, 43 S.W.3d at 641.  Five conditions must have occurred for a party’s admission to be conclusive against him:  (1) the declaration relied upon must have been made in the course of a judicial proceeding; (2) the declaration was contrary to an essential fact embraced in the theory of recovery or defense asserted by the party; (3) the statement was deliberate, clear, and unequivocal; (4) giving conclusive effect to the declaration would not run contrary to public policy; and (5) the declaration related to a fact upon which a judgment for the opposing party was based.  
Carr
, 242 S.W.2d at 229;
 
Peck
, 172 S.W.3d at 31; 
Lee
, 43 S.W.3d at 641-42.

Applying the elements required to establish a judicial admission to the case at hand, it is evident that the trial court correctly concluded that appellant judicially admitted that the Chimney Rock property was appellee’s separate property and that appellee was barred from introducing evidence that he and appellee held the property jointly as tenants in common.  First, appellant’s admissions were made during the course of a judicial proceeding:  in at least one pretrial hearing,
(footnote: 3) in his sworn inventory and appraisement,
(footnote: 4) and in his response to interrogatories.  Moreover, a majority of his pretrial discovery requests were aimed at matters essential to his claim for reimbursement and economic contribution to the community estate for expenditures made on the Chimney Rock property.  
See 
Tex. Fam. Code Ann
. § 3.402(a) (Vernon 2006) (providing in pertinent part that “‘economic contribution’ is the dollar amount of:  (1) the reduction of the principal amount of a debt secured by a lien on property owned before marriage, to the extent the debt existed at the time of marriage”);
 Vallone v. Vallone
, 644 S.W.2d 455, 459 (Tex. 1982) (holding that right of reimbursement arises when “community time, talent and labor are utilized to benefit and enhance a spouse’s separate estate, beyond whatever care, attention, and expenditure are necessary for the proper maintenance and preservation of the separate estate, without the community receiving adequate compensation”).

Second, the admission is contrary to an essential fact asserted by appellant at trial:  that the property was held by appellant and appellee jointly as tenants in common and, therefore, that he was entitled to a one-half undivided interest as his separate property.  It was not until trial that Appellant asserted he was previously mistaken about the property being appellee’s separate property.  He claimed that he only made the statements based on the fact that she owned the property before they were married.  However, when appellant made the prior inconsistent statements, they were deliberate, clear, and unequivocal.  The inventory and interrogatory responses, for instance, were sworn before a notary public.  As to appellant’s argument that the statements were made while he was acting pro se,
(footnote: 5) appellant’s Amended Original Counterpetition for Divorce, filed by appellant’s counsel approximately one month before trial, restates appellant’s claim for reimbursement and economic contribution to the community estate for “funds or assets expended by the community estate for payment of unsecured liabilities of [appellee’s] separate estate.”  This claim is not pled in the alternative.

The fourth element is satisfied in that giving effect to the admissions of the separate character of the property would be consistent with the public policy that a party should not be permitted to recover when he has sworn himself out of court by a clear and unequivocal statement.  Appellant should not be allowed to maintain consistently under oath that property belonged to appellee as her separate property, then argue at trial that he owned half as his separate property.  And, finally, the admission supports the judgment in favor of appellee.

Because appellant judicially admitted that the property was appellee’s separate property, the trial court properly barred him from offering conflicting evidence, such as the deed, and from disputing the fact admitted. 
 See Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 905 (Tex. 2000).  We overrule appellant’s fourth, thirty-third, thirty-fourth, thirty-sixth, and thirty-seventh issues.  Because the trial court’s award of the Chimney Rock property to appellee is supported by appellant’s judicial admission, we need not address appellant’s issues complaining about the trial court’s finding and conclusion voiding the deed to appellant.  
See
 
Tex. R. App. P
. 47.1; 
Everett v. TK-Taito, L.L.C.
, 178 S.W.3d 844, 851 n.5 (Tex. App.—Fort Worth 2005, no pet.).

Reimbursement and Economic Contribution

In his seventeenth, thirty-eighth, and forty-second issues, appellant argues that the trial court abused its discretion by finding that he did not present sufficient evidence to support his claims for reimbursement and economic contribution
(footnote: 6) for funds expended by the community estate on the Chimney Rock property.  At trial, appellant agreed with his counsel that he was seeking reimbursement “for either [his] time, toil, and labor or economic contributions made by the community estate to pay for that house [the Chimney Rock property] or do work on that house during the marriage.” 

Economic Contribution

The Texas Family Code provides that “[a] marital estate that makes an economic contribution to property owned by another marital estate has a claim for economic contribution with respect to the benefitted estate.”  
Tex. Fam. Code Ann
. § 3.403(a); 
Boyd v. Boyd
, 131 S.W.3d 605, 613 (Tex. App.—Fort Worth 2004, no pet.).  The amount of a claim for economic contribution is derived by multiplying the equity in the benefitted property on the date of the divorce by a fraction.  
Tex. Fam. Code Ann
. § 3.403(b); 
Boyd
, 131 S.W.3d at 613.  The fraction’s numerator is the amount of the economic contribution by the contributing estate and its denominator is equal to the sum of that same economic contribution, the equity in the benefitted property on the date of the marriage, and any economic contribution to the benefitted property by the benefitted estate during the marriage.  
Tex. Fam. Code Ann
. § 3.403(b); 
Boyd
, 131 S.W.3d at 613.  A spouse who seeks economic contribution must bring forth sufficient evidence for the fact-finder to determine the enhancement value to the benefitted estate.  
Moroch v. Collins
, 174 S.W.3d 849, 856 (Tex. App.—Dallas 2005, pet. denied); 
Hailey v. Hailey
, 176 S.W.3d 374, 388 (Tex. App.—Houston [1st Dist.] 2004, no pet.); 
Boyd
, 131 S.W.3d at 613.

A party may bring a claim for reimbursement of payments by one marital estate to satisfy unsecured liabilities of another marital estate or for time, toil, and talent expended on the other marital estate.  
Tex. Fam. Code Ann
. § 3.408(b)(1); 
Raymond v. Raymond
, 190 S.W.3d 77, 83 (Tex. App.—Houston [1st Dist.] 2005, no pet.)
; 
Alsenz v. Alsenz
, 101 S.W.3d 648, 654 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)
.
  
A trial court resolves claims for reimbursement in its discretion in accordance with equitable principles. 
 Tex. Fam. Code Ann.
 § 3.408(c), § 7.007(b) (Vernon 2006); 
Vallone
, 644 S.W.2d at 658; 
Zeptner v. Zeptner
, 111 S.W.3d 727, 735 (Tex. App.—Fort Worth 2003, no pet.).  A party claiming a right of reimbursement must plead and prove that the expenditures were made and that they are reimbursable.  
Vallone
, 644 S.W.2d at 459; 
Hailey
, 176 S.W.3d at 384.

Appellant testified at trial that he helped pay the mortgage on the house during the parties’ marriage before he went to prison.  Although he testified that the Chimney Rock property was appraised by the Tarrant Appraisal District (TAD)  at $97,900
(footnote: 7) and that it was insured for $126,000, he did not introduce any evidence corroborating this testimony.  Moreover, although he asserted in a handwritten exhibit filed with the court that the value of the Chimney Rock property when the parties were married was $62,606, he offered no documentation supporting this assertion, nor for his assertion in the same document that the value of the property in January 2004 was $194,000.  Appellee testified that the value of the house had declined since 1986 and was approximately $85,000.  Accordingly, we conclude and hold that the trial court did not abuse its discretion by denying appellant’s economic contribution claim because there is no evidence that would enable the fact-finder to determine the enhanced value of the Chimney Rock property in accordance with the formula set forth in section 3.403(b).  
See Rogers v. Foxworth
, 214 S.W.3d 196, 199 (Tex. App.—Tyler 2007, no pet.)
; 
In re Marriage of Morris
, 123 S.W.3d 864, 871 n.4 (Tex. App.—Texarkana 2003, no pet.)
.

Appellant also testified that he contributed his services as a contractor in rebuilding the Chimney Rock property “bigger” and “better” after a fire destroyed the property.  He further testified that for his contractor’s fee he was entitled to twenty percent of the $160,790.38 paid by Allstate on the Chimney Rock homeowner’s policy in 1986, 1987, and 1990 and twenty percent of $17,370.60 that Allstate paid in 1992 for theft and for wind and hail damage.
(footnote: 8) In addition, he stated that around 1990, he and appellee took out a $20,000 ten-year loan in his name to install a swimming pool.  
His reimbursement claim also encompassed funds he allegedly paid for taxes, insurance, interest and principal on the house mortgage and pool note, and living expenses.

Appellee disputed the extent of appellant’s work and time expended in working on the Chimney Rock property after the fire.  She also stated that a large amount of the payments from Allstate was for the parties’ personal property losses; appellant did not offer any evidence showing what part of those payments was attributable to the house or its contents.  Appellant never introduced any financial records showing amounts he paid on the parties’ unsecured liabilities.  Therefore, we conclude and hold that the trial court did not abuse its discretion by denying appellant’s reimbursement claim.  
See
 
Zeptner
, 111 S.W.3d at 736-37.  We overrule appellant’s seventeenth, thirty-eighth, and forty-second issues.

Bill of Exception and Bystander’s Bills

In his twenty-third issue, appellant contends that the trial court abused its discretion by refusing to admit evidence of appellee’s then-current job and 401(k) or other benefits she may have been entitled to for that job.  At trial in November 2005, appellee testified that she had left her job at Kimberly Clark that July.  When appellant’s counsel asked appellee where she was currently working, she was hesitant to answer.  Her counsel explained to the trial court that appellee had left her previous job because appellant “while incarcerated has had a history of calling her employer and harassing her and her employer.”  Appellee’s counsel also stated that “[i]f there’s a question of does she have any benefits, any retirement that she’s accumulated 
in the last few weeks
, we will represent to the Court there is none.”  [Emphasis added.] 

The court stated that it would either require appellee to testify or find some other way to satisfy appellant that appellee had not accrued any benefits.  Appellee then testified that she had been working at her new job since July 2005.  The matter was never mentioned again on the record.

On January 17, 2006, appellant filed a bill of exception in which he appears to complain about the trial court’s failure to rule on some of his motions.  
See
 
Tex. R. App. P
. 33.2.  He later filed an objection to the trial court’s failure to take action on the bill in accordance with rule 33.2(c)(2).  
Tex. R. App. P
. 33.2(c)(2).  In March 2006, he filed bystander’s bills signed by fellow inmates in which they attested to observing the matters to which the bill of exception pertained.  
See
 
Tex. R. App. P
. 33.2(c)(3).  Their affidavits complain about the trial court’s refusal to allow appellee to testify about her new job and possible benefits, in addition to other matters, such as the refusal of appellant’s counsel to return his file and documents used as trial court exhibits.

Even though appellant filed a bill of exception, his argument fails because he has not shown what the missing evidence is, nor has he shown that any missing evidence was actually presented to the trial court.  The bystander’s affidavits merely assert that appellee’s benefits from her new job could represent a substantial part of the estate that should have been divided.  This does not show that missing evidence was presented to the trial court at trial that should be reviewed by this court on appeal.  
See Spivey v. James
, 1 S.W.3d 380, 385 (Tex. App.—Texarkana 1999, pet. denied) (op. on reh’g) (“In an evidentiary context, a bill of exceptions exists when a trial court refuses to admit evidence and counsel then provides that evidence for appellate review. . . .  When providing a bill of exceptions, further, the evidence must have been presented to the trial court at trial or no error is shown.”
) (citations omitted).  Accordingly, we overrule appellant’s twenty-third issue.
(footnote: 9)
Access to Funds to Pay Counsel

Appellant contends in his twenty-fourth and twenty-fifth issues that the trial court did not allow him access to the community funds held in trust by appellee’s attorney so that appellant could obtain counsel. The record shows that during a hearing on September 15, 2004 the trial court encouraged appellant to obtain counsel and specifically stated that it would allocate funds from the trust to pay his counsel’s retainer.
(footnote: 10)  On October 11, 2004, the trial court found that appellant was not indigent because he could have access to the trust account being held by appellee’s attorney.  Additionally, appellant states in his brief and the record shows that his attorney was in fact paid $5,000 from the trust account.  We, therefore, overrule appellant’s twenty-fourth and twenty-fifth issues.
(footnote: 11)
Failure to Hold Hearing on Motion for New Trial

In his twenty-sixth issue, appellant contends that the trial court erred by failing to hold an evidentiary hearing on his motion for new trial.  Whether to hold a hearing on a motion for new trial is in the trial court’s discretion.  
Jefa Co. v. Mustang Tractor & Equip. Co
., 868 S.W.2d 905, 909 (Tex. App.—Houston [14th Dist.] 1994, writ denied); 
Parham v. Wilbon
, 746 S.W.2d 347, 351 (Tex. App.—Fort Worth 1988, no writ).  The only time a trial court is required to hold an evidentiary hearing on a motion for new trial is when the ground for the motion involves jury misconduct.  
Tex. R. Civ. P
. 327; 
Jefa
, 868 S.W.2d at 909; 
Parham
, 746 S.W.2d at 351.  This case was a bench trial; therefore, the trial court did not err by failing to hold such a hearing.  We overrule appellant’s twenty-sixth issue.

Judicial Errors in Decree

In his twenty-seventh issue, appellant contends that the trial court made judicial errors in the decree.  Although appellant argues law pertinent to the propriety of a judgment nunc pro tunc, it appears that his true contention is that the final decree, which was signed on February 9, 2006, does not comport with a November 28, 2005 letter from the trial court to the parties communicating its decision about the property division.  However, we have compared the decree and letter and conclude that the decree accurately reflects the trial court’s ruling in its letter.  Accordingly, we overrule appellant’s twenty-seventh issue.

Alleged Inaccuracies in Trial Record

In his twenty-eighth issue, appellant contends that the trial court erred by denying his request to correct an alleged inaccuracy in the reporter’s record. According to appellant’s supplemental brief, the record incorrectly shows the purchase price of the pool at the Chimney Rock property as $10,000.

The record shows that the following exchange occurred at trial on November 14, 2005:

Q. And do you know how much y’all agreed to pay for that pool?

A. The pool was without finance charges, it started at 20,000 plus the interest. 

Q. And do you know how long the note was supposed to last?

A. I think it was a ten-year note. It ran out last year. It got paid for last year sometime.

Q. She made some of the payments after you were incarcerated, correct?

A. That’s correct.

Q. So there were payments, am I to understand, for about 15 years on that?

A. I think, yeah, about 15 years is what it was. Either 10 or 15. I can’t recollect right off. It started at around 1990 up until last year is when the last payment she made on it in 2004.

Q. And you believe that – you believe that the purchase price was about $20,000?

A. 10,000

Q. Huh?

A. 10,000

Q. All right. 

On appeal, appellant filed a motion alleging that the references to the $10,000 purchase price for the swimming pool were inaccurate and that the amount should have been $20,000. In accordance with Texas Rule of Appellate Procedure 34.6(e)(2), we abated the appeal and remanded the matter to the trial court to determine whether the reporter’s record was indeed inaccurate. 
 See
 
Tex. R. App. P. 
34.6(e)(2); 
Garcia v. Barreiro
, 115 S.W.3d 271, 277 n.3 (Tex. App.—Corpus Christi 2003, no pet.).  The trial court held a hearing on the motion on November 17, 2006.  The trial court informed appellant during the hearing that the purpose of the hearing was not to change his testimony, but rather to determine whether the words that were written in the reporter’s record were the words that came out of his mouth at the time of trial.  Appellant testified at that hearing that the reporter’s record was not actually inaccurate but that appellant had misstated the purchase price during his testimony.  Because appellant did not contend that there were actually inaccuracies in the reporter’s record, but merely that he wanted to change his testimony as to the purchase price, we overrule appellant’s twenty-eighth issue.

Additional Findings of Fact and Conclusions of Law

In his second and third issues, appellant contends that the trial court erred by refusing to make additional findings of fact and conclusions of law.  A trial court is required to file findings of fact and conclusions of law within twenty days after a timely request is made.  
See
 
Tex. R. Civ. P
. 297; 
Main Place Custom Homes, Inc. v. Honaker
, 192 S.W.3d 604, 612 (Tex. App.—Fort Worth 2006, pet. denied).  Upon a party’s timely request for additional findings, the trial court “shall file any additional or amended findings and conclusions that are appropriate.”  
Tex. R. Civ. P
. 298; 
Main Place
, 194 S.W.3d at 612.  Additional findings are not required if the original findings and conclusions “properly and succinctly relate the ultimate findings of fact and law necessary to apprise [the party] of adequate information for the preparation of [the party’s] appeal.”  
Balderama v. W. Cas. Life Ins. Co
., 794 S.W.2d 84, 89 (Tex. App.—San Antonio 1990), 
rev’d on other grounds
, 825 S.W.2d 432 (Tex. 1991); 
see Main Place
, 194 S.W.3d at 612; 
Jamestown Partners, L.P. v. City of Fort Worth
, 83 S.W.3d 376, 386 (Tex. App.—Fort Worth 2002, pet. denied); 
In re Marriage of Morris
, 12 S.W.3d 877, 886 (Tex. App.—Texarkana 2000, no pet.); 
Finch v. Finch
, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ).  An ultimate fact is one that would have a direct effect on the judgment.  
Main Place
, 194 S.W.3d at 612; 
Morris
, 12 S.W.3d at 886.  If the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal, there is no reversible error.  
Main Place
, 194 S.W.3d at 612; 
Jamestown Partners
, 83 S.W.3d at 386; 
Johnston v. McKinney Am., Inc
., 9 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  If the requested findings will not result in a different judgment, the findings need not be made.  
Main Place
, 194 S.W.3d at 613; 
Johnston
, 9 S.W.3d at 277.

Here, appellant requested additional findings on the following matters:
(footnote: 12)  (1) why the trial court did not allow appellee to testify about her new job and 401(k) retirement and other benefits; (2) how the Harlem Street property was acquired and why the trial court chose the method it did for disbursing attorney’s fees from appellee’s counsel’s trust fund; (3) why the trial court chose to award appellee all of her retirement or other benefits; (4) how the trial court construed the 1986 deed to appellant and whether the deed was ambiguous; (5) whether the trial court “answered the legal question, that would determine when property is considered separate and what constitutes a gift or could a gift be made to the community estate”; (6) whether the trial court considered appellant’s counterclaim; (7) why the trial court did not make a monetary award to appellant for appellee’s selling two of his vehicles; (8) correction of the address of Chimney Rock property, which shows Arlington instead of Fort Worth on page two of the findings of fact and conclusions of law;
(footnote: 13) (9) whether the trial court ruled “on all issues formed in the final decree of divorce”; and (10) why the trial court did not rule on motions filed by appellant while he was acting pro se.
(footnote: 14)
 None of the matters raised in appellant’s request for additional findings would result in a different judgment.  In its findings of fact and conclusions of law, the trial court adequately explained the characterization and division of the parties’ property, including the factors it considered in making a just and right division.  It also rejected any reimbursement to appellant under any theory, including any equitable theory.  Thus, the trial court’s original findings and conclusions are sufficient for appellant to adequately present his contentions on appeal.  Accordingly, we overrule appellant’s second and third issues.

Just and Right Division

In his first, nineteenth, and twenty-first issues, appellant complains that the trial court did not make a just and right division of the parties’ community property.  Specifically, he complains about the trial court’s award to appellee of all of her General Motors retirement benefits, the trial court’s finding that appellant failed to support appellee when he went to prison, the trial court’s finding that it took the community debt into account when dividing the property, the trial court’s denial of appellant’s reimbursement claim, and the trial court’s determination that the Chimney Rock property was appellee’s separate property. 

A trial court is charged with dividing the community estate in a “just and right” manner, considering the rights of both parties.  
Tex. Fam. Code Ann.
 § 7.001; 
Boyd
, 131 S.W.3d at 610; 
Zeptner
, 111 S.W.3d at 734.  Trial courts are afforded wide discretion in dividing marital property upon divorce; therefore, a trial court’s property division may not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion.  
Jacobs v. Jacobs
, 687 S.W.2d 731, 733 (Tex. 1985); 
Boyd
, 131 S.W.3d at 610.  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.  
See Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986); 
Boyd
, 131 S.W.3d at 610.  We must indulge every reasonable presumption in favor of the trial court’s proper exercise of its discretion in dividing marital property.  
Boyd
, 131 S.W.3d at 610; 
Pletcher v. Goetz
, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh’g).  Accordingly, we will reverse the cause only if the record demonstrates that the trial court clearly abused its discretion, and the error materially affected the just and right division of the community estate.  
Jacobs
, 687 S.W.2d at 732-33; 
Boyd
, 131 S.W.3d at 610.

The trial court must order an equitable, but not necessarily equal, division of the community estate.  
Barnard v. Barnard
, 133 S.W.3d 782, 787 (Tex. App.—Fort Worth 2004, pet. denied); 
Tate v. Tate
, 55 S.W.3d 1, 10 (Tex. App.—El Paso 2000, no pet.); 
Vandiver v. Vandiver
, 4 S.W.3d 300, 302 (Tex. App.—Corpus Christi 1999, pet. denied).  The Texas Supreme Court has set forth a nonexclusive list of factors the trial court may consider in dividing the marital estate.  
See Murff v. Murff
, 615 S.W.2d 696, 698-99 (Tex. 1981); 
Barnard
, 133 S.W.3d at 785.  These factors include the disparity and abilities of income or earning capacity, the spouses’ capacities and abilities, benefits that a party not at fault would have derived from the marriage had it continued, business opportunities, education, relative physical condition and obligations, disparity of ages, size of separate estates, and nature of the property.  
Murff
, 615 S.W.2d at 698-99; 
Barnard
, 133 S.W.3d at 785.

We have already determined that the trial court did not abuse its discretion by awarding the Chimney Rock property to appellee as her separate property and by rejecting appellant’s reimbursement claim.  The trial court awarded appellant numerous items of personal property, including equipment he used in his work as a general contractor before he went to prison.  It also awarded appellant a used Lincoln Town Car, worth approximately $4,000.
(footnote: 15)   It awarded appellee numerous items of personal property, any life insurance policies insuring her life, all burial policies in her name, the balance held in her counsel’s trust fund–to be applied to the federal income tax liability for the sale of the Harlem Street property, and all of her retirement benefits from General Motors
.  The trial court divided the parties’ community debts as follows:  approximately $26,121.51
(footnote: 16) in appellant’s name to appellant, and approximately $37,057.29 to appellee. 

Appellee testified that appellant would have a one-eighth community property interest in her retirement benefits, with a current value at the time of trial of $20.19 per month, but she asked the trial court to award the entire amount of those benefits to her based on the allegations in her petition, including appellant’s fault in the breakup of the marriage, appellant’s criminal conviction, and her allegation that he had wasted assets.  
There is no requirement that community pension benefits be divided equally, and the trial court has the discretion to award the entire amount to one spouse, so long as no abuse of discretion is shown in the overall division of the estate.  
Woods v. Woods
, 619 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1981, no writ); 
In re Marriage of Butler
, 543 S.W.2d 147, 150 (Tex. Civ. App.—Texarkana 1976, writ dism’d).  Appellant’s community property interest in appellee’s retirement benefits was not significant, nor did the trial court’s awarding appellee the entire amount of those benefits result in an inequitable division of the parties’ community estate.

Additionally, contrary to appellant’s contention, the trial court divided the parties’ debts, even charging appellee with a greater amount of debt than appellant.  Appellee testified that since appellant had been incarcerated, he had not assisted in paying any of the household bills and that she had not received any money from him since 1999.  She testified that she had been making the house payments and paying taxes on the house since then.  Although the parties had approximately $5,000 in a savings account when appellant went to prison, appellee testified that she used that money to pay bills.  Finally, appellee also testified that the bulk of the proceeds from the sale of the Harlem Street property would have been available to divide between the parties but for appellant’s actions during the pendency of the divorce that caused her to incur additional attorney’s fees—i.e., his filing of voluminous motions requiring responses by her attorney. 

Considering the entire record, we conclude and hold that the trial court’s division of the parties’ community property was not so unfair and unjust as to constitute an abuse of discretion. 
 See Murff
, 615 S.W.2d at 698-99; 
Barnard
, 133 S.W.3d at 785
.  We overrule appellant’s first, nineteenth, and twenty-first issues.

Waived Issues

In his eighteenth, twentieth, and twenty-second issues, appellant contends that the trial court abused its discretion by characterizing appellee’s life insurance policies as personal property and awarding them to appellee without any reimbursement to appellant, by failing to make an “in kind” division of property rather than a monetary division, and by failing to sanction appellee for selling some of appellant’s vehicles.  However, appellant failed to adequately argue or appropriately cite authority for these issues.  
See
 
Tex. R. App. P. 
38.1(h)
.  An inadequately briefed issue may be waived on appeal.
  Fredonia State Bank v. Gen. Am. Life Ins. Co.
, 881 S.W.2d 279, 284-85 (Tex. 1994); 
McClure v. Denham
, 162 S.W.3d 346, 349 (Tex. App.—Fort Worth 2005, no pet.).  Therefore, we overrule appellant’s eighteenth, twentieth, and twenty-second issues.

Other Briefed Issues

Although appellant does not bring specific issues challenging the following matters, he does complain about them in his brief and references authority in support of his arguments.  Accordingly, construing his brief liberally, as we must, we will address the arguments that we are able to discern. 
 See
 
Tex. R. App. P. 
38.9 (stating that briefing rules should be construed liberally); 
Dominey v. Unknown Heirs & Legal Representatives of Lokomski
, 172 S.W.3d 67, 71 (Tex App.—Fort Worth 2005, no pet.); 
Interstate Apartment Enters., L.C. v. Wichita Appraisal Dist.
, 164 S.W.3d 448, 453 n.3 (Tex. App.—Fort Worth 2005, no pet.).

Failure to Appoint Counsel

Appellant claims that the trial court 
erred by not inquiring into his mental competence when he raised questions about his competency and need of an attorney at the beginning and then again throughout the proceedings
.

Texas has statutorily provided for appointed counsel in juvenile delinquency cases, in parental rights termination cases, and in cases for which application for court-ordered mental health services has been made. 
 Gibson v. Tolbert
, 102 S.W.3d 710, 712 (Tex. 2003); 
see
 
Tex. Fam. Code Ann. 
§§ 51.10, 
107.013 (Vernon Supp. 2006); 
Tex. Health & Safety Code 
§ 574.003 (Vernon 2003). 
 The legislature has also statutorily provided for the possibility of appointed counsel in other civil matters by conferring upon a district court judge the discretion to “appoint counsel to attend to the cause of a party who makes an affidavit that he is too poor to employ counsel to attend to the cause.” 
 Gibson
, 102 S.W.3d at 712 (quoting 
Tex. Gov’t Code Ann. 
§ 24.016 (Vernon 2004)).

The Texas Supreme Court has never held that “a civil litigant must be represented by counsel in order for a court to carry on its essential, constitutional  function.” 
 Gibson
, 102 S.W.3d at 712 (quoting 
Travelers Indem. Co. v. Mayfield
, 923 S.W.2d 590, 594 (Tex. 1996) (orig. proceeding)).
 No limits have been addressed as to the court’s discretionary authority to appoint counsel. 
 Id.
  Courts do have an inherent power to appoint counsel under exceptional circumstances. 
 Id.
  Only by evaluating the unique circumstances of a given civil case could a court ever determine that it has no reasonable alternative than to appoint counsel. 
 Id.

The facts in this case do not demonstrate rare and unusual circumstances such that a trial court judge would determine there was no reasonable alternative than to appoint counsel.  Appellant filed voluminous motions in the trial court prior to obtaining counsel.  Several of those motions resulted in hearings and some in relief.  Appellant was ultimately able to obtain counsel before a hearing on March 8, 2005, and counsel represented him through trial.  We hold that the trial court did not abuse its discretion by determining that exceptional circumstances warranting the appointment of counsel did not exist.
(footnote: 17)
Denial of Recusal Motion

On February 1, 2005, appellant filed a motion to recuse the trial judge.  On February 11, 2005, after a hearing at which appellant participated by conference call, the presiding judge of the Eighth Administrative Judicial Region denied the motion.

We review the denial of a motion to recuse for an abuse of discretion.  
Tex. R. Civ. P.
 18a(f); 
Vickery v. Vickery
, 999 S.W.2d 342, 349 (Tex. 1999); 
Carmody v. State Farm Lloyds
, 184 S.W.3d 419, 420 (Tex. App.—Dallas 2006, no pet.); 
Sommers v. Concepcion
, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  When a party challenges the denial of a recusal motion based on alleged bias or impartiality, the party must show that this bias arose from an extrajudicial source and not from actions during the pendency of the trial court proceedings unless the actions during the proceedings indicate a high degree of favoritism or antagonism that renders fair judgment impossible.  
Sommers
, 20 S.W.3d at 41; 
Grider v. Boston Co
., 773 S.W.2d 338, 346 (Tex. App.—Dallas 1989, writ denied).

Here, appellant’s recusal motion and his arguments at the hearing show that he was dissatisfied with the trial court’s rulings.  He did not allege any extrajudicial source of bias or impartiality, nor did he demonstrate that the trial court’s actions during the proceedings showed a high degree of favoritism or antagonism that rendered fair judgment impossible.  A party’s remedy for unfair or wrong rulings is to assign error regarding those rulings.  
Sommers
, 20 S.W.3d at 41; 
Grider
, 773 S.W.3d at 346.  Accordingly, we conclude and hold that there was no error in the denial of the recusal motion.

Appellate Attorney’s Fees

In the final decree, the trial court awarded appellee “a judgment of $20,000.00 against [appellant] for attorney’s fees on appeal for the benefit of [appellee’s] attorney, Michael S. Newman, together with all costs and expenses. . . . conditioned on the pursuit of an ultimately unsuccessful appeal by” appellant.  However, on the same day it signed the decree, the trial court allowed Newman to withdraw from representation of appellee, and appellee has acted pro se in this appeal, declining to file a brief.  Accordingly, we conclude that the trial court abused its discretion by including this appellate attorney’s fees provision in the decree.
  See Pullman v. Brill, Brooks, Powell & Yount
, 766 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1988, no writ) (acknowledging that “it is true that a party must have retained an attorney to be eligible for attorney’s fees”
).

Conclusion

Having overruled all of appellant’s issues,
(footnote: 18) but also having concluded that the award of appellate attorney’s fees to appellee’s counsel Newman was in error, we modify the decree to delete the award of appellate attorney’s fees and accompanying remittitur provisions.  We affirm the decree as modified.

PER CURIAM

PANEL F: LIVINGSTON, GARDNER, and MCCOY, JJ.

DELIVERED: August 31, 2007

FOOTNOTES
1:
See
 
Tex. R. App
. P. 47.4.

2:
Appellee declined to file a brief.

3:
During a May 20, 2004 hearing in which appellant was asking the trial court to help him obtain records for the purpose of bringing a reimbursement claim for community expenditures on the Chimney Rock property, the following exchange occurred:

THE COURT:  All right.  Is - - you’re saying that the house that she lives in is her separate property?

[APPELLANT]:  Yes, sir.  It’s her separate property, but I - -

THE COURT:  You acknowledge that it’s her separate property?

[APPELLANT]:  Yes, sir.

4:
Appellate courts have given preclusive effect to admissions made in sworn inventories and appraisements filed with the trial court. 
Dutton
, 18 S.W.3d at 853; 
Roosevelt
, 699 S.W.2d at 374; 
see also Tschirhart v. Tschirhart
, 876 S.W.2d 507, 509 n.1 (Tex. App.–Austin 1994, no writ).  

5:
Appellant also appears to contend that he was not mentally competent to make a judicial admission and that the trial court should have inquired into his competency.  As we note later, while acting pro se, appellant filed numerous motions in the trial court, obtaining hearings and even some relief.  Thus, the record does not show that appellant could not make a clear, deliberate, and unequivocal statement that would support a judicial admission.  Moreover, appellant announced his intent to pursue a reimbursement claim early in the divorce, which he maintained until the actual trial, and which is consistent with his admission that the property was appellee’s separate property.

6:
Although appellant characterized his claim generally as one for “reimbursement,” his claim for the amount the community paid to reduce the debt on the Chimney Rock property falls under the definition of “economic contribution” in the family code.  
See
 
Tex. Fam. Code Ann
. § 3.402(a); 
see also
 
id
. § 3.402(b) (providing that “‘Economic contribution’ does not include the dollar amount of:  (1) expenditures for ordinary maintenance and repair or for taxes, interest, or insurance; or (2) the contribution by a spouse of time, toil, talent, or effort during the marriage.”); 
Cardwell v. Cardwell
, 195 S.W.3d 856, 860 (Tex. App.—Dallas 2006, no pet.) (holding that wife’s claim for “reimbursement” was more properly characterized as claim for economic contribution).

7:
Appellee agreed that TAD had appraised the property at this value.

8:
Appellant tried to introduce letters from Allstate showing these amounts, but the trial court sustained appellee’s hearsay objection to them.  Nevertheless, the documents are included in the appellate record as trial exhibits.

9:
To the extent that appellant complains about the remaining matters set forth in his bill of exception and the bystander’s affidavits, his argument fails for the same reasons.

10:
In response to appellant’s allegation that the trial court had denied him funds from the trust account to pay for an attorney, the trial court stated:

I don’t recall you ever asking me to pay any money out of the funds for an attorney.  I would love for an attorney to be representing you in this case.  I would encourage you to contact an attorney.  I will be happy to pay a retainer out of these funds for you as well.  I would very much like for you to have an attorney.  It would make - - that would make this process go a lot smoother, and I think you would be much better represented than trying to represent yourself. 

11:
We also deny appellant’s motion for an accounting of the funds held in appellee’s counsel’s trust fund; the record indicates the disposition of the entire balance of the fund.

12:
Appellant did not propose specific findings; he merely stated the issues he wanted additional findings for.

13:
This mistake is corrected in the supplemental findings of fact and conclusions of law. 

14:
Appellant’s request for additional findings is not included in the clerk’s record, which required extensive supplementation based on the numerous documents filed by appellant.  However, appellant filed a copy of the request simultaneously with this court.

15:
The decree also awarded appellant a 1979 Yugo and 1987 Dodge van, but appellee testified that she had sold them before trial for nominal amounts. 

16:
Appellant testified at trial that the credit card debt had been “charged off.” 

17:
See, e.g., Ex Parte Munoz
, 139 S.W.3d 349, 351 (Tex. App.—San Antonio 2004, no pet.) (concluding that expunction proceedings are not the type of extraordinary civil proceedings that require appointment of counsel and concluding that trial court did not abuse its discretion by denying motion for appointment of counsel); 
Wigfall v. Tex. Dep’t of Criminal Justice
, 137 S.W.3d 268, 274-75 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that trial court did not abuse its discretion by denying appointed counsel to inmate suing prison officials). 

18:
To the extent that relief has not been granted on any of the numerous motions appellant has filed, all relief is denied.